[No. B203056. Second Dist., Div. Three. Dec. 18, 2007.]

LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DESHAWN W., et al., Real Parties in Interest.

**COUNSEL**

Raymond G. Fortner, Jr., County Counsel, James M. Owens, Assistant County Counsel, and Owen L. Gallagher, Principal Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Law Office of Timothy Martella, Eliot Lee Grossman, Trane Martin Hunter and Roxanna Alavi for Real Party in Interest Deshawn W.

Law Office of Barry Allen Herzog, Ellen L. Bacon and Dennis R. Smeal for Real Party in Interest James W. IV.

**OPINION**

**KLEIN, P. J.**—The Los Angeles County Department of Children and Family Services (DCFS) seeks writ review of an order denying its petition to modify an order of the juvenile court placing three-month-old James W. V in the care of his paternal grandmother. We grant the writ petition and issue a writ of

mandate directing the juvenile court to vacate the order placing James W. V in the care of the paternal grandmother.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Death of Kayla S.*

On the afternoon of September 7, 2007, City of Hawthorne police officers found two-year-old Kayla S. on the floor of her home with her stepfather, James W. IV, and his infant son, James W. V. Kayla S. was taken to a hospital where she was determined to be in full cardiac arrest with numerous internal injuries and severe brain injury consistent with shaken baby syndrome. The medical director of the intensive care unit indicated the injuries appeared to have been inflicted within the preceding 12 to 24 hours.[1] Kayla S. had been in the care of James W. IV on September 7, 2007. Based on a handwritten note on the otherwise typewritten police report, it appears James W. IV called Kayla S.'s mother, Deshawn W., not 911, when he found Kayla S. was not breathing. James W. IV indicated Kayla S. recently had complained of stomach pains and she had seen a doctor for a possible hernia. Deshawn W. indicated Kayla S. fell from a couch three weeks earlier but otherwise had suffered no injury. On September 10, 2007, Kayla S. died as a result of her injuries.

### 2. *Dependency petition filed.*

On September 12, 2007, DCFS filed a dependency petition with respect to Kayla S.'s half siblings, Jeremiah C., age six years, and James W. V. The petition alleged the nonaccidental death of Kayla S. while in the care of Deshawn W. and James W. IV. The detention report indicated Deshawn W. told the CSW (children's social worker) that James W. IV cared for Kayla S. while Deshawn W. was at work. The child had been diagnosed as having hernias, she was scheduled to have surgery and had been examined by her regular pediatrician on September 6, 2007.

At the detention hearing, Jeremiah C. was released to his father. The juvenile court continued the matter to permit DCFS to assess the paternal grandmother's home for placement of James W. V. The paternal grandmother indicated to the juvenile court she held a valid daycare provider license and she lived with her husband and two sons.

DCFS reported that, although the paternal grandmother's home otherwise was suitable for the care of James W. V, it recommended the child not be

---

[1] Later reports indicated Kayla S. also had older injuries.

placed with the paternal grandmother because Deshawn W. and James W. IV would have unlimited access to the child and might abscond with the child.

### 3. *James W. V released to the paternal grandmother.*

On September 24, 2007, the juvenile court heard argument on the placement of James W. V. The child's counsel requested placement with the paternal grandmother, noting the paternal grandmother had never been a care provider for Kayla S., who was not her grandchild. Further, the paternal grandmother was willing to comply with any order the juvenile court might make to ensure the safety of James W. V. Over the objection of DCFS, the juvenile court ordered James W. V placed with the paternal grandmother.

The juvenile court granted Deshawn W. and James W. IV monitored visits twice a week at a DCFS approved location with a DCFS approved monitor. The juvenile court indicated that, "out of an abundance of caution, [the monitor] should not be" the paternal grandmother or her husband.

### 4. *DCFS seeks modification of the custody order.*

On October 24, 2007, DCFS filed a petition to modify the juvenile court's custody order and remove James W. V from the paternal grandmother's care based on DCFS's assertion the paternal grandmother was permitting Deshawn W. and James W. IV to have unmonitored contact with James W. V. The application indicated that on September 26, 2007, police officers interviewed Jeremiah C. at school and he indicated Deshawn W. and James W. IV were residing with James W. V at the paternal grandmother's home. However, at a monitored visit conducted on September 27, 2007, Deshawn W. indicated she and James W. IV were living with the maternal grandmother.

On October 17, 2007, DCFS social workers made an unannounced visit to the paternal grandmother's home and found Deshawn W.'s car parked outside the residence. That same day, DCFS received an anonymous referral indicating Deshawn W. and James W. IV had been overheard bragging they were living with James W. V at the paternal grandmother's home. Deshawn W. and James W. IV laughed about seeing the child in an unmonitored setting despite the juvenile court's order.

On October 18, 2007, social workers, accompanied by police officers, again made an unannounced visit to the paternal grandmother's home and found Deshawn W.'s car parked in the driveway. Although neither Deshawn W. nor James W. IV was found on the premises, DCFS detained James W. V. The paternal grandmother told the police officers Deshawn W.'s car had been parked in her driveway since the death of Kayla S. on

September 10, 2007. However, when the CSW evaluated the paternal grandmother's home on September 19, 2007, for placement of James W. V, the car was not there. Also, Deshawn W. and James W. IV drove the car to a DCFS interview on September 25, 2007, and on September 27, 2007, the car was seen in the DCFS parking lot.

On October 19, 2007, the maternal grandmother inquired of the CSW what efforts DCFS was making to place James W. V in her care. DCFS noted this question contradicted Deshawn W.'s earlier claim that she and James W. IV were living with the maternal grandmother in that the child obviously could not be placed with the maternal grandmother if the parents were living there.

DCFS's petition requested modification of the current order and detention of the child because the evidence indicated the parents were having unmonitored visits at the paternal grandmother's home.

### 5. *The hearing on the petition.*

At the hearing, James W. IV's counsel claimed there was no evidence Deshawn W. and James W. IV were living with the paternal grandmother, and DCFS had never bothered to check the maternal grandmother's residence, where Deshawn W. and James W. IV claimed to be living. Counsel indicated the paternal grandmother may have exaggerated when she said the car had been parked at her home "all the time" and may have meant it was parked there when it was not in use and no one inquired further of the paternal grandmother to prevent her statement from being clarified. The father's counsel requested immediate return of the child to the paternal grandmother's home.

Before hearing argument from DCFS, the juvenile court indicated there was no evidence Deshawn W. and James W. IV "were actually visiting there at any time. We have this car. And that's it. Is there something else I am missing. If there is, help me." County counsel first indicated Deshawn W. had stated that James W. V had been diagnosed as having the same hernias that Kayla S. suffered shortly before her death. At that point in the hearing, an aunt left the courtroom after bursting out, "I can't stand the lying." When county counsel noted the anonymous referral, the juvenile court indicated it was "unsubstantiated" after DCFS went to the home twice but failed to locate Deshawn W. and James W. IV on either occasion.

County counsel then addressed the paternal grandmother's statement about the car being parked in the driveway and indicated it was "very clear and very consistent both with the social worker and with the detective that the car has not been moved. That it has been there [in the driveway], and it is just

parked there. Yet the parents have been seen driving the car on several occasions." The juvenile court noted the medical evaluation of James W. V remained outstanding and stated, "I need something tangible. Something I can feel [and] touch. Not a car."

County counsel then mentioned the statement by Jeremiah C. that Deshawn W. and James W. IV were living with James W. V at the paternal grandmother's home. The juvenile court reiterated the failure of the authorities to find any evidence that Deshawn W. or James W. IV lived at the paternal grandmother's. County counsel again urged the presence of the car in the driveway and Jeremiah C.'s statement was sufficient to detain the child. The juvenile court responded, "The child needs to be returned to the [paternal] grandmother."

DCFS then requested the juvenile court order that neither Deshawn W. nor James W. IV be at the paternal grandmother's home for any reason at any time. After Deshawn W. and James W. IV assured the juvenile court they understood the order, the juvenile court denied DCFS's petition to modify the custody order.

### 6. *Proceedings before this court.*

On October 24, 2007, DCFS filed the instant petition for extraordinary writ and requested an immediate stay of the juvenile court's order returning James W. V to the paternal grandmother's care. By order filed October 25, 2007, we granted the request for a stay and directed DCFS to detain James W. V pending further order of this court. Deshawn W. and James W. IV both have filed opposition to the petition. On November 28, 2007, we issued an order to show cause why the petition should not be granted.

### 7. *Updated information submitted to this court by DCFS.*

DCFS has filed a letter brief dated December 6, 2007, that updates this court's information with respect to the proceedings in the juvenile court. Attached to the letter brief are the Interim Review Report filed in the juvenile court by DCFS on December 5, 2007, notices of the December 5, 2005 hearing, a first amended dependency petition, an Information for Court Officer report and the minute order issued by the juvenile court on December 5, 2007. The Interim Review Report reveals that James W. IV was arrested on November 29, 2007, on charges arising out of the homicide of Kayla S. and that the coroner has indicated Kayla S. was sexually abused prior to her death. The first amended petition adds allegations of sexual abuse of Kayla S. and the Information for Court Officer report addresses Deshawn W.'s visitation of James W. V. The minute order indicates the juvenile court continues to order that James W. V be placed with his paternal grandmother.

## DISCUSSION

### 1. *Standard of review.*

Custody determinations made by a juvenile court are reviewed under the deferential abuse of discretion standard. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319 [27 Cal.Rptr.2d 595, 867 P.2d 706].) When "a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citations.]" (*Id.* at p. 318.)

### 2. *Arguments presented by the parents.*[2]

In addition to the arguments present in the trial court, Deshawn W. and James W. IV argue that Jeremiah C. may have meant to say Deshawn W. and James W. IV were living with the maternal grandmother. They also assert the anonymous tip was uncorroborated and thus insufficient to demonstrate risk to the child. Further, the juvenile court properly could discount the anonymous tip because it lacked indicia of reliability. (*Illinois v. Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317].) They conclude the circumstantial evidence presented was insufficient to demonstrate that any unmonitored visitation had occurred. Thus, the stay previously imposed by this court must be lifted.

Counsel for Deshawn W. and James W. IV also have jointly filed a motion to strike the updated information submitted to this court by DCFS. Deshawn W. and James W. IV request an award of attorneys fees to compensate their counsel for the time expended in bringing the motion to strike in the amount of $2,527.50 and an order directing deputy county counsel to pay sanctions to the clerk of this court for violation of the rules of appellate procedure. (*Pierrotti v. Torian* (2000) 81 Cal.App.4th 17, 29 [96 Cal.Rptr.2d 553].) Deshawn W. and James W. IV argue the updated information was not before the juvenile court at the time it released James W. V to his paternal grandmother and cannot be considered by this court. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

---

[2] At oral argument, DCFS suggested Deshawn W. and James W. IV lacked standing to oppose DCFS's writ petition to set aside the order for relative placement because the issue of relative placement does not affect the substantial rights of either parent. (See *In re Jasmine J.* (1996) 46 Cal.App.4th 1802, 1806 [54 Cal.Rptr.2d 560].) We disagree. It appears Deshawn W. and James W. IV have standing to oppose the relief sought by DCFS given that reunification of the child with Deshawn W. and James W. IV remains a possibility and placement of the child with a relative arguably improves their chance of reunification. (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034–1035 [111 Cal.Rptr.2d 243].) Thus, we perceive no impediment to the appearances by Deshawn W. and James W. IV in opposition to DCFS's writ petition.

### 3. *The order for placement of James W. V with paternal grandmother must be reversed.*

■ The evidence presented to the juvenile court demonstrated that unmonitored contact with Deshawn W. and James W. IV constituted a serious risk of physical harm to James W. V, in that his two-year-old half sibling Kayla S. met her death by nonaccidental causes while in their care. The evidence also established a reasonable likelihood that the paternal grandmother was permitting Deshawn W. and James W. IV to have unmonitored contact with James W. V. The paternal grandmother lied about the circumstances under which Deshawn W.'s car was parked in the paternal grandmother's driveway. It reasonably may be concluded that the paternal grandmother intended to conceal relevant facts from the social workers and the police. The gravity of the danger presented cannot be ignored. Indeed, the danger so far outweighed any benefit the infant may have realized as a result of placement with the paternal grandmother, that it was an abuse of discretion not to err in favor of the safety of the child and order the child detained. Consequently, we grant the writ petition.

### 4. *The request to strike the updated information and the request for sanctions are denied.*

As noted above, Deshawn W. and James W. IV seek an order striking the updated information presented to this court by DCFS and an award of sanctions and attorneys fees against deputy county counsel. We deny these requests.

The documents attached to the letter brief were filed in the juvenile court on December 5, 2007. Such documents properly may be judicially noticed by this court and thus are fundamentally different than the unsworn statement by the mother's counsel submitted to the appellate court in *Zeth S.* (See *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390 [18 Cal.Rptr.3d 301].)

Additionally, *Zeth S.* involved appellate review of an order terminating parental rights. Such an order is "conclusive and binding" on the parties and the juvenile court has "no power to set aside, change, or modify" the order except under the circumstances enumerated in the statute. (Welf. & Inst. Code, § 366.26, subd. (i)(1).) The order at issue here, on the other hand, relates to placement of a child made at the outset of the proceedings. Because this court previously issued a stay of the juvenile court's order placing James W. V with the paternal grandmother, it is helpful to this court to be aware of the developments in the case after issuance of the stay. Indeed, the updated information, among other things, revealed the juvenile court had not modified its previous order placing James W. V with the paternal grandmother. Thus,

the writ petition had not been rendered moot. We therefore conclude it was not inappropriate for DCFS to advise this court of the status of the proceedings below in order to prevent the issuance of an unnecessary writ of mandate. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [31 Cal.Rptr.3d 472, 115 P.3d 1133].) Consequently, we deny the motion to strike and the request for attorneys fees and sanctions.

## DISPOSITION

The petition is granted; the order to show cause is discharged. Let a writ of mandate issue directing the juvenile court to vacate the order placing James W. V in the care of the paternal grandmother and enter a new order consistent with the views expressed herein.

Kitching, J., and Aldrich, J., concurred.

On January 17, 2008, the opinion was modified to read as printed above. The petitions of real parties in interest Deshawn W. and James W. IV for review by the Supreme Court were denied March 26, 2008, S160228.